IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 22, 2004

## STATE OF TENNESSEE v. LUIS CASTANON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-C-2056     Seth Norman, Judge**

_____

**No. M2003-01491-CCA-R3-CD - Filed March 8, 2005**

_____

Following a jury trial, Defendant, Luis Castanon, was charged with and convicted of four counts of aggravated rape and one count of aggravated burglary. He was sentenced to twenty years for each of the aggravated rape offenses and three years for aggravated burglary. Three of the aggravated rape sentences were ordered to be served consecutively to each other, with the remaining aggravated rape sentence and the aggravated burglary sentence to be served concurrently, for an effective sentence of sixty years. On appeal, Defendant argues that the evidence presented at trial was insufficient to support the jury's verdict and that the trial court's imposition of consecutive sentences was improper. We conclude that the evidence was sufficient to support the Defendant's convictions and hold that the imposition of consecutive sentencing was appropriate. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Geoffrey Coston, Kingston Springs, Tennessee, (on appeal), and Ross E. Alderman, District Public Defender; John D. Wiethe, Assistant Public Defender; and Amy Dawn Harwell, Assistant Public Defender, Nashville, Tennessee, (at trial), for the appellant, Luis Castanon.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Pamela Sue Anderson, Assistant District Attorney General; and Lisa Angela Naylor, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

At Defendant's trial, the victim testified that on May 17, 1998, around two-thirty in the morning, she came home to her apartment alone after an evening out. She fixed herself breakfast and watched television for about twenty minutes before going to her bedroom. When she put her hand on her bedroom door, two men with nylon pantyhose and underwear on their heads opened the bedroom door from inside and grabbed her, telling her not to scream. The taller of the two men had a knife. The victim asked what they wanted and one of them replied, "we just want cash." She told them she had cash in her car and told them where her car keys were located. They answered, "No, we just want to f... you." After a struggle, the two men wrestled the victim to the floor, ripping her clothes. While the taller man held her down and held the knife to her throat, the shorter one removed the victim's shoes and clothes. Over the course of the next two hours the two men repeatedly penetrated the victim vaginally, anally, and orally. During the episode, the men made the victim keep her eyes closed, telling her, "Don't see." The victim tried to talk to the men, in an attempt to "make it more personal so they would not hurt me." At one point, the men allowed the victim to smoke a cigarette, and the shorter of the two men went to the victim's refrigerator, asking her if she had any alcohol. He found some grape juice and "put the bottle in [the victim's] face, and asked [her] if he could have some." The two men continued to orally penetrate the victim and the shorter of the two men ejaculated in the victim's hair and on her neck. Soon after that, the taller of the two men stated he was "going to clean up around here" and forced the victim, at knife-point, to get in the shower and began to wash her with his hands. She testified that she was "very conscious of the evidence that was on my left side of my face and my neck, and so I . . . kept my head out of the water." The fire alarm went off and the two men disappeared, leaving the victim standing in the shower. After approximately one minute, the victim opened her eyes and ran to her phone. When she was unable to get a dial tone, she ran to her neighbor's apartment. Her neighbor called the police. That evening, the victim was shown a photo lineup which included a photograph of the Defendant, but she was unable to positively identify anyone.

At trial, the State introduced evidence from the police investigation that implicated Defendant. Fingerprints lifted from the grape juice bottle found in the victim's apartment matched Defendant's prints. Police determined that the victim's bedroom window, with the screen cut open, had been the attackers' point of entry. Fingerprints taken from the inside of this windowsill also matched Defendant's prints. The victim told police her CD player and a George Winston CD were missing from her bedroom. Police found this CD and CD player at the home of Defendant's friend. A DNA test revealed that the DNA of semen collected from the victim's neck and hair matched Defendant's DNA. The Tennessee Bureau of Investigation determined that the semen's DNA profile would be common in one out of every 99,000 Caucasians, and in one out of every 110,000 African Americans.

Defendant testified that he was present in the victim's apartment while she was being raped, but he did not participate. According to Defendant, he had spent the day drinking at a local sports

bar. That evening he met up with a friend. The two of them drove around, having several more beers on the road and about two more beers back at the sports bar. Defendant sniffed some cocaine to help stay awake, but still fell asleep in his friend's vehicle. When he woke up, he followed his friend into the front door of an apartment. Believing it was his friend's apartment, Defendant went into a bedroom and fell asleep. When he woke up, he saw his friend's brother sitting in the other bedroom. Defendant went to the refrigerator to get something to drink and when he turned around he noticed his friend engaged in oral sex with a naked woman several feet away. Defendant sat at the table for a few minutes and watched until he noticed his friend had a knife in his hand. At that point he became very upset and afraid, and tried to leave. When his friend took the victim at knife-point into the bathroom, Defendant set off the fire alarm with his lighter and fled through the victim's bedroom window.

Based on this proof, the jury found Defendant guilty on all counts: four counts of aggravated rape and one count of aggravated burglary. At the sentencing hearing, the court determined that Defendant's sentences should be served consecutively because he committed these offenses while on probation. Defendant was sentenced to serve twenty years for each aggravated rape count and three years with regard to the aggravated burglary count. Counts one, two, and three were ordered to be served consecutively with each other, but concurrently with counts four and five, for an effective sentence of sixty years.

## II. Analysis

### A. Sufficiency of the Evidence

Defendant claims that the evidence does not support the convictions, and the jury should have found him not guilty. Specifically, Defendant asserts that because he presented a plausible alternative version of the facts, no rational juror could have found him guilty beyond a reasonable doubt.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

In this case, there is no dispute that the victim's apartment was burglarized and that the victim was in fact raped in her apartment by two men. The defendant does not dispute that he was present in the victim's apartment during the rapes. At trial, Defendant contested his guilt by claiming that while he witnessed another man raping the victim, he himself was not a participant in the rapes. Instead, he claimed that he entered through the front door of the apartment and fell asleep in a bedroom, that there were two other men in the apartment who committed the rapes, and that he was responsible for setting off the fire alarm that caused the perpetrators to flee.

The victim testified in detail about the events that took place during the two hours she was being raped. During her testimony, she described how the shorter of the two attackers put a grape juice bottle in her face and requested permission to "have some". Defendant's fingerprints were found on the grape juice bottle, as well as on the window sill of the victim's bedroom window, which was the apparent point of entry. Also, the victim testified that the shorter of the two men ejaculated on her neck and in her hair after forcing her to perform oral sex on him. DNA samples taken from the victim's neck and hair were consistent with DNA samples taken from the Defendant. The State introduced photographs during the trial, including a photograph of the neatly-made bed which Defendant claimed he had slept in while the victim was being raped.

Viewing the evidence in a light most favorable to the state, we conclude a rational trier of fact could find beyond a reasonable doubt that Defendant was an active participant in the burglary of the victim's apartment and the rapes that followed. Accordingly, the evidence is sufficient to support the convictions for aggravated burglary and aggravated rape.

### B. Consecutive Sentencing

Defendant challenges the trial court's imposition of consecutive sentences. The trial court imposed three consecutive sentences of twenty years each, and two concurrent sentences of twenty years and three years, for an effective sentence of sixty years. The trial court premised consecutive sentencing upon a finding that the Defendant was on probation for DUI at the time the offenses were committed. *See* Tenn. Code Ann. § 40-35-115(b)(6). Defendant argues that (1) the record does not clearly demonstrate that Defendant was actually on probation at the time these offenses were

committed and (2) imposing an effective sixty-year sentence solely because the offenses were committed while on probation for a misdemeanor offense is inconsistent with general principals of sentencing.

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption that the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). When the trial court follows the statutory sentencing procedure and gives due consideration and proper weight to the factors and principles relevant to sentencing, this court may not disturb the sentence. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

Specific findings that an extended sentence is necessary to protect society and is reasonably related to the severity of the offenses are prerequisites to consecutive sentencing under the "dangerous offender" category in Tenn. Code Ann. § 40-35-115(b)(4). *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are not required for the other categories of Tenn. Code Ann. § 40-35-115(b). *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999). Nevertheless, the general principles of sentencing require that the length of sentence be "justly deserved in relation to the seriousness of the offense" and "be no greater than that deserved for the offense committed." *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (citing Tenn. Code Ann. §§ 40-35-102(1) and -103(2)).

Defendant argues that the record is not clear that the defendant was in fact on probation at the time this offense was committed. From the transcript of the sentencing hearing, it appears that the trial court considered and relied upon a certified copy of a warrant in making its findings. The court stated:

> [W]ith regard to consecutive sentencing, the Court, of course, has factors that it must look at. There can be no question that under 40-35-115 subsection (b), (6) must apply, the defendant is sentenced for an offense committed while on probation. There is no question before me in the name of Luis Castanon, the copy of the warrant submitted by the State that shows that on January the 9th, 1997, Mr. Castanon was placed on probation, and that that probation was revoked on May 28th, 1998. The indictment in this case alleges, and a jury has found, that these offenses occurred on May 17th, which would be while the defendant was in fact on probation, according to the record that I have before me. So, that factor applies.

Neither the copy of the warrant nor the presentence report were made a part of the record on appeal. It is the appellant's duty to prepare such a record and transcript necessary to convey a fair, accurate and complete account of what transpired relative to the issues on appeal. Tenn. R. App. P. 24(b). When the record is incomplete, and this Court is unable to review all of the evidence considered by the trial court in setting a sentence, this Court is precluded from considering the issue. *See State v. Clifford Rogers*, No. W2003-01375-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 302, *14 (Tenn. Crim. App., at Jackson, April 1, 2004), *perm. app. denied* (Tenn. Oct. 4, 2004) (presentence report); *State v. Cooper*, 736 S.W.2d 125, 131 (Tenn. Crim. App. 1987) (search warrant and affidavit given in support of the search warrant). We must presume that the trial court's ruling that Defendant was on probation is correct. *See Clifford Rogers*, 2004 Tenn. Crim. App. LEXIS at *15; *Cooper*, 736 S.W.2d at 131.

Assuming the trial court was correct in its finding that Defendant was on probation at the time of the offense, we next address Defendant's contention that a court may not impose consecutive

sentences based solely on Tennessee Code Annotated section 40-35-115(b)(6). Defendant insists that the intent of section 40-35-115(b)(6) is to impose a sentence that is consecutive to a probation violation, "not sentences that are consecutive to one another simply because the Defendant was on probation." Furthermore, Defendant asks us to interpret Tennessee Code Annotated section 40-35-115(b) as allowing consecutive sentences when factors (1), (2), (3), (4) or (5) apply, but not when factors (6) or (7) are the only factors that apply. Defendant asserts that while factors (1), (2), (3), (4) and (5) relate to the character of the individual that is repetitive, dangerous and not likely receptive to rehabilitation, factors (6) and (7) are unrelated to the character of the individual or crime. Defendant argues that to impose consecutive sentencing for multiple convictions solely because a defendant committed an offense while on probation in accordance with factor (6) is "an illogical extension of [Tennessee Code Annotated section] 40-35-115 and inconsistent with [general principals of sentencing]." Defendant provides no case law in support of his argument.

By its terms, the statute only requires that one of the 7 statutory factors be applicable in order for the trial court to order consecutive sentencing. Tenn. Code Ann. § 40-35-115(b)*; see State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). Therefore, according to the language of the statute, a court may order sentences to run consecutively even if the court finds by a preponderance of the evidence that factor six is the only statutory factor applicable, so long as the aggregate sentence complies with the general principles of sentencing. Furthermore, we hold that when a defendant commits multiple offenses while on probation, the trial court is not limited to ordering the defendant to serve a sentence consecutive to *prior* sentences. There is no requirement that a defendant have additional sentences not yet fully served as a result of prior convictions for section 40-35-115(b)(6) to apply. It is within the discretion of the trial court to apply consecutive sentencing if a defendant commits multiple offenses while on probation in accordance with section 40-35-115(b)(6) in cases where, like this one, a defendant is convicted in one trial of more that one offense, even if that defendant has fully served a prior sentence at the time of sentencing for the new offenses. *C.f. State v. Samuels*, 44 S.W.3d 489, 494 n.3 (Tenn. 2001) (explaining that there is no statutory provision limiting consecutive sentencing to related offenses or offenses stemming from the same proceeding); *compare also State v. Moore*, 942 S.W.2d 570, 572-73 (Tenn. Crim. App. 1996) (holding that a trial judge may order a new sentence to be served consecutively to the one for which probation was previously granted, in contradiction to defendant's argument that Tenn. Code Ann. § 40-35-115 only applies to multiple convictions arising out of one proceeding and is not a basis for ordering that new sentences be served consecutively to prior sentences). This is consistent with prior decisions of this Court. *See State v. Andre Anthony*, No. W2002-01377-CCA-R3-CD, Tenn. Crim. App. LEXIS 1108, *44 (Tenn. Crim. App. at Jackson, Dec. 30, 2003), *perm. app. denied* (Tenn. June 6, 2004) ("Moreover, dangerous offender status notwithstanding, the record supports the imposition of consecutive sentencing based on Defendant's commission of the offense while on probation. . . . It is necessary to find the presence of only one of the statutory categories listed in Tennessee Code Annotated section 40-35-115(b)."); *State v. Richard Cole, III*, No. W2002-02826-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 854, *17 (Tenn. Crim. App. at Jackson, Oct. 8, 2003), *perm. app. denied* (Tenn. March 8, 2004) ("the defendant committed the offenses while on probation for two misdemeanor offenses. This is an alternate basis upon which consecutive sentencing may be premised."); *State v. Hayes*, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995) ("Although not

addressed by the state, we note that the fact that the defendant was on probation when these offenses were committed renders him eligible for consecutive sentences. . . . However, we decline to impose consecutive sentences."). The trial court did not err in ordering consecutive sentences based solely on Defendant's committing these offenses while on probation.

Having concluded the trial court was authorized to impose consecutive sentences, we now examine the aggregate length of the sentences. As noted, the aggregate length must be "justly deserved in relation to the seriousness of the offense[s]" and "be no greater than that deserved for the offense[s] committed." *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (citing Tenn. Code Ann. §§ 40-35-102(1) and -103(2)). Defendant was convicted of four counts of aggravated rape and one count of aggravated burglary. He was ordered to serve three consecutive sentences of twenty years each and two concurrent sentences of twenty years and three years, for an effective sentence of 60 years. As a violent offender, Defendant must serve one hundred percent of each of the twenty-year sentences imposed. Tenn. Code. Ann. § 40-35-501(i).

The victim in this case was repeatedly raped at knife-point by two attackers over a period of more that two hours. The two men broke into her home and waited for her, even waiting in her bedroom for over twenty minutes after she returned home while the victim prepared and ate breakfast, believing she was safe in the sanctity of her own home. Her attackers raped her over and over, in tandem, vaginally, orally, and anally. The aggregate sentence was justly deserved in relation to the seriousness of the offenses and was not greater than that deserved. Accordingly, we conclude the trial court did not err in ordering the sentences to be served consecutively. This issue is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE